**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1616**

FRIDA EPOSI SANGI,

        Petitioner,

    v.

MATTHEW G. WHITAKER, Acting Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted:  November 29, 2018          Decided:  December 21, 2018

Before KING and DIAZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Petition denied in part, granted in part, and remanded by unpublished per curiam opinion.

Alex G. Isbell, SOLOW, ISBELL & PALLADINO, LLC, Philadelphia, Pennsylvania, for Petitioner.  Joseph H. Hunt, Assistant Attorney General, Melissa Neiman-Kelting, Assistant Director, Melissa K. Lott, Trial Attorney, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Frida Eposi Sangi, a native and citizen of Cameroon, petitions for review of an order of the Board of Immigration Appeals denying Sangi's second motion to reopen her removal proceedings. We deny the petition for review in part, grant the petition in part, and remand this matter to the Board for further proceedings consistent with this opinion.

On September 21, 2004, the Board dismissed Sangi's appeal from the immigration judge's order finding her removable and denying her applications for asylum, withholding of removal, and protection under the Convention Against Torture. Sangi's applications were based on her claimed past persecution, and well-founded fear of future persecution, on account of her membership in the particular social group of Anglophone Cameroonians involved with the Southern Cameroons National Council (SCNC) and, relatedly, her pro-SCNC political opinion. The immigration judge ruled that Sangi failed to proffer sufficient evidence to corroborate her membership in the SCNC, which was at the cornerstone of her claims for relief from removal. The Board affirmed this ruling on appeal and, shortly thereafter, denied Sangi's first motion to reopen.

In December 2017, Sangi filed the underlying motion to reopen with the Board, alleging that a material change in conditions in Cameroon affecting members of her proffered social group warranted granting the untimely and number-barred motion to reopen. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii) (2012); *accord* 8 C.F.R. § 1003.2(c)(3)(ii) (2018). Sangi also claimed that conditions in Cameroon had deteriorated to such a degree that, in addition to her fears of being individually persecuted if returned, she had a well-founded fear of future persecution on account of being an Anglophone. Thus,

2

Sangi's future persecution claim was based not only on her personal circumstances, but also a "pattern or practice" theory. *See* 8 C.F.R. § 1208.13(b)(2)(iii) (2018). The Board denied the motion as untimely and numerically barred, finding that Sangi did not satisfy the changed country conditions exception to the governing regulations. The Board did not consider Sangi's evidence in terms of a "pattern or practice" claim.

An alien may file one motion to reopen within 90 days of the entry of a final order of removal. 8 U.S.C. § 1229a(c)(7)(A), (C) (2012); 8 C.F.R. § 1003.2(c)(2) (2018). This time limit does not apply if the basis for the motion is to seek asylum or withholding of removal "based on changed country conditions, . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *accord* 8 C.F.R. § 1003.2(c)(3)(ii). The alien bears the burden of establishing changed country conditions. *See Wanrong Lin v. Holder*, 771 F.3d 177, 185 (4th Cir. 2014) (noting that alien's burden "was to show that country conditions in [her country] were materially different from those conditions at the time of [her] original removal proceedings"); *In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (B.I.A. 2007) (explaining that, in assessing new evidence of a change in country conditions, the Board "compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below"). The motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1) (2018).

3

We review the denial of a motion to reopen for abuse of discretion, *see* 8 C.F.R. § 1003.2(a) (2018); *Mosere v. Mukasey*, 552 F.3d 397, 400 (4th Cir. 2009), and afford such a ruling "extreme deference, given that motions to reopen are disfavored because every delay works to the advantage of the deportable alien who wishes merely to remain in the United States," *Sadhvani v. Holder*, 596 F.3d 180, 182 (4th Cir. 2009) (internal quotation marks omitted). As such, we will reverse a Board order denying a motion to reopen "only if the [Board] acted arbitrarily, irrationally, or contrary to law." *Prasad v. Holder*, 776 F.3d 222, 225 (4th Cir. 2015).

We discern no abuse of the Board's considerable discretion in its critical findings that Sangi's removal proceedings should not be reopened to permit Sangi to (1) reinvigorate her previously rejected past persecution claim, which was based on two instances of detention and torture that Sangi linked to her pro-SCNC political opinion and her membership in the particular social group of Anglophone Cameroonians involved with the SCNC; or (2) assert a new asylum claim based on Sangi's *individualized* fear of future persecution on account of her membership in the same social group. We thus conclude that the Board did not abuse its discretion in denying the motion as untimely and number-barred as to those claims. *See* 8 C.F.R. § 1003.2(c)(2) (2018).

Sangi's next argument—that the Board abused its discretion in failing to address whether the new country conditions evidence was sufficient to justify reopening her removal proceedings to allow Sangi to pursue a "pattern or practice" theory of future persecution—is not so neatly resolved. Plenary review of the new country conditions evidence reveals an arguable uptick in the civil unrest between Anglophone

4

Cameroonians and Cameroon's Francophone government. Based on this evidence, Sangi sought to reopen her removal proceedings to pursue a future persecution claim based on "a pattern or practice" of persecution against members of the broader social group of Anglophone Cameroonians. *See* 8 C.F.R. § 1208.13(b)(2)(iii). Under this theory, Sangi's burden was to show that the persecution faced by Anglophone Cameroonians is "thorough or systemic." *Yong Hao Chen v. INS*, 195 F.3d 198, 203 (4th Cir. 1999); *see accord Ngure v. Ashcroft*, 367 F.3d 975, 991 (8th Cir. 2004) (explaining that, to establish "[a] pattern or practice of persecution," the persecution must be "systemic, pervasive, or organized"). The Board, in addressing Sangi's prima facie eligibility for relief based on her claimed fear of future persecution, opined that the proffered evidence did not establish that Sangi faced "an individualized risk of persecution or torture as an Anglophone." But this conclusion does not completely dispose of the issue because the Board did not grapple with the "pattern or practice" component of Sangi's future persecution claim.

Accordingly, consistent with the Supreme Court's instruction in *Gonzales v. Thomas*, 547 U.S. 183, 185-87 (2006) (per curiam); *INS v. Ventura*, 537 U.S. 12, 16-18 (2002), we grant the petition for review in part as to this claim and remand to the Board for further consideration of this issue. We deny the petition for review as to all other issues. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION DENIED IN PART, GRANTED IN PART, AND REMANDED*

5